# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | |
|---|---|
| **DIGITAL BACKGROUND CORPORATION,** )<br>) | |
| )<br>*Plaintiff,* ) | **Case No: 3:07-cv-00803-JPG-CJP** |
| )<br>vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **APPLE, INC.,** ) | |
| )<br>*Defendant.* ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

### INTRODUCTION

Plaintiff Digital Background Corporation ("DBC") hereby submits this Opposition to Defendant Apple, Inc.'s ("Apple") Motion to Transfer Venue. Apple seeks transfer of this patent infringement case to the Northern District of California, San Jose Division. As movant, Apple bears the burden of proving that the Northern District of California is a substantially more convenient forum than where the case is properly situated in the Southern District of Illinois.

Apple must show that the Northern District of California is clearly more convenient. Apple is unable to meet this burden in that: 1) DBC's representatives, located in Southern California, will have to travel regardless of the venue; 2) key non-party witnesses, the inventor of the patent-in-suit and the patent attorney who prosecuted the patent, are located in Texas and travel to California would severely inconvenience them; and 3) numerous relevant documents such as prosecution histories, conception and development materials as well as damages information are located in Texas and must be sent regardless of venue. Thus, not only is the

Northern District of California no more convenient than the Southern District of Illinois, but California is not a substantially more convenient forum than Illinois.

Apple must also show that the interests of justice weigh strongly in favor of the Northern District of California as the more convenient forum. It fails to do so. The time period for resolution of cases in both districts is comparable (although the Track B schedule proposed by this Court is faster than patent actions in the Northern District of California), and thus does not strongly weigh in favor of the Northern District of California. Further, acts of infringement in the way of sales took place in both California and Illinois and therefore do not favor California over Illinois. Lastly, as acts of infringement took place in Illinois, Illinois has an interest in litigating the case in its own forum. Apple is unable to meet its burden of proof and its motion should be denied.

Further, this case is properly filed according to the venue statute that specifically applies to patent infringement cases, 28 U.S.C. § 1400(b). While this may be only one of many jurisdictions in which the case could properly be filed and there is nothing unique about the Southern District of Illinois to this case, the Southern District of Illinois is certainly not, nor has it been proven to be substantially inconvenient. It is DBC's choice of forum, and the availability of multiple appropriate forums in such cases is due to: 1) Congress' decision in enacting the patent venue law, and to 2) Apple's nationwide marketing of the product at issue. In the context of 28 U.S.C. § 1404(a), movant must show its proffered forum is not only uniquely, but also substantially more convenient which Apple is unable to do because of the existence of potential witnesses and evidence in numerous jurisdictions outside California.

## BACKGROUND

Defendant Apple filed a Motion to Transfer Venue to the Northern District of California, San Jose Division, pursuant to 28 U.S.C. § 1404(a). While 1404(a) provides for the transfer of an action from one federal district to another based on the convenience of the parties and witnesses and in the interests of justice, Apple's arguments only highlight *Apple's* location, *Apple's* employee-witnesses, *Apple's* burden of travel costs and expenses, and *Apple's* documents in California. Apple's brief seems to suggest that the only place this action could be brought is in its own backyard. However, the Court should note that Apple, Inc. is a multi-billion dollar company[1] which offers for sale and sells products and software in every judicial district in the United States, including the Southern District of Illinois.[2]

In fact, because of its size, Apple was able to successfully maintain venue outside of California in another patent infringement action, even though both parties held their principal places of business in California, witnesses were mostly, if not all, located outside the forum venue of Delaware, and no documents on the design, manufacture, use or sale of the accused products were located in or near Delaware. *See Apple Computer, Inc. v. Unova, Inc.*, No. Civ.A. 03-101-JJF, 2003 WL 22928034, *3 (D.Del. Nov. 25, 2003) (attached as **Exhibit B**). In *Apple Computer, Inc. v. Unova, Inc.*, Apple asserted arguments such as: no location would be ideal for the convenience of witnesses who are dispersed throughout the United States; parties are large corporations with substantial resources who will not be substantially burdened by travel to Delaware; Delaware's expertise and experience in patent law point to keeping the case there; and Apple, as plaintiff, is entitled to deference on its choice of an appropriate forum. *Id.* These

---

[1] Apple generated over $24 billion in revenue and $3.5 billion in net income in the fiscal year 2007. *See* **Exhibit A**, article entitled "Apple Reports Fourth Quarter Results" found at
http://www.apple.com/pr/library/2007/10/22results.html
[2] Apple concedes, in another context, that the accused software is offered for sale and sold in Illinois as it is in every other judicial district. *See* Docket No. 25 at 3.

arguments are especially telling considering the contradictory arguments Apple makes in the instant case.[3]

Further, as Apple employs thousands of employees nationwide[4], brings in billions of dollars in profits annually[5], and markets its products nationwide, Apple should feel little to no burden/impact of litigating a case properly situated in the Southern District of Illinois. *See, DeFrancesco v. First Horizon Home Loan Corp.*, Slip Copy, No. 06-0058-DRH, 2006 WL 3196838, *1 (S.D.Ill., Nov. 3, 2006)(Court kept case in Illinois based, in part, on fact that defendant was national in scope and would have had little difficulty litigating there or anywhere).

While the Northern District of California may be more convenient for Apple, Apple has not demonstrated that the private and public interest factors make the Northern District of California substantially more convenient than the Southern District of Illinois, thus its Motion to Transfer should be denied, as explained more fully below.

## ARGUMENT

Patent infringement actions are unique in that they have their own venue statute. Pursuant to 28 U.S.C. § 1400(b), venue in civil actions for patent infringement may be brought "where the defendant has committed acts of infringement and has a regular and established place of business." Case law holds that for a corporate defendant in a patent infringement case, the test for venue becomes "whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed.Cir. 1990)(citing 28 U.S.C. §§ 1391(c) and 1400(b)). Part of the

---

[3] DBC recognizes that not all facts between the instant case and *Apple Computer, Inc. v. Unova, Inc.* are similar.
[4] *See* **Exhibit C**, excerpts from Apple, Inc.'s Form 10-K filed with the Securities and Exchange Commission as of September 29, 2007.
[5] *See* fn. 1, *supra*.

reasoning behind this is that patent infringement is a tort which occurs wherever infringing products are offered for sale or sold. In other words, because infringers are in essence committing a tort in every jurisdiction where products are offered for sale or sold,[6] so long as personal jurisdiction is proper, venue is proper as well. As Apple is subject to personal jurisdiction here, the Southern District of Illinois is a proper venue under 28 U.S.C. § 1400(b) for this action.[7]

DBC acknowledges that based on the same statute, other districts may also be proper venues, including the Northern District of California. Yet, while 28 U.S.C. § 1404(a) permits courts to transfer cases to a more convenient forum, courts must first consider the following factors in making such a determination: 1) the convenience of the parties, 2) the convenience of the witnesses, and 3) the interests of justice. *See Electroplated Metal Solutions, Inc. v. American Services, Inc.*, 500 F.Supp.2d 974, 978 (N.D.Ill. 2007). Further, "it is incumbent upon the party seeking transfer to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, a plaintiff's choice of forum should not be disturbed." *Hall v. The Holmes Group, Inc.*, No. 4:05CV2052 HEA, 2006 WL 148742, *2 (E.D.Mo. Jan. 18, 2006).

In balancing the interests in this case, Apple did not demonstrate that the Northern District of California is strongly a more convenient forum than plaintiff's choice of forum in the Southern District of Illinois.

A.    **Apple Fails to Show That the Convenience of the Parties Factor Weighs Strongly in its Favor**

---

[6] Under 35 U.S.C. § 271, both sales and offers for sale (among other things) are infringing acts.
[7] Apple admits in its Answer that personal jurisdiction is proper in the Southern District of Illinois (Docket No. 24 at 1); thus Apple also admits that venue is proper in the Southern District of Illinois.

5

Apple argues that because both parties reside in California (though still hundreds of miles apart) that the Northern District of California would be more convenient. Yet, "a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill. 1995). DBC is located in Southern California and its representatives must still travel by plane to Northern California or Southern Illinois, regardless. As one party or the other must travel in this case, Apple has not provided clear evidence that the Northern District of California is an overwhelmingly convenient forum for the parties. The end result is that it is plaintiff's choice of forum, not defendant's, and for DBC, the Southern District of Illinois is the favorable choice.

As "easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy…for cases to be litigated…in…major metropolitan areas," Apple fails to prove why the Northern District of California is any more convenient. *See Defrancesco*, 2006 WL 3196838 at *2 citing *Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)(Court found that convenience of parties factor weighed in favor of Southern District of Illinois in that defendant was national in scope). The Southern District of Illinois is located near the large metropolitan area of St. Louis, Missouri making airplane flights, lodging, and other necessities presumably just as accessible as the Northern District of California and Apple has not offered information otherwise.

In addition, Apple argues that sales are the only connection to the Southern District of Illinois suggesting that DBC's choice of forum should receive little deference. Yet, sales in the forum venue actually allow courts to award more deference to the plaintiff's choice of forum. *See Cummins-Allison Corp. v. Glory Ltd.,* No. Civ.A. 2-03-CV-358TJ, 2004 WL 1635534, *5

(E.D.Tex. May 26, 2004)(In finding that "the admitted sale of allegedly infringing products in…[the district] is an event that is significant and relevant to the citizens of th[e] district," the Court denied transfer to another venue) citing *Nokia Corp. v. Buca, Inc.*, No. 3-01-CV-2613-R, 2002 WL 1461913, *2 (N.D.Tex. July 2, 2002) ("Denying defendant's motion to transfer venue where the allegedly infringing products were sold and offered for sale in the forum's state even though the products were distributed and sold from the defendant's headquarters in another state…"). As evidenced below, a significant amount of sales takes place in the Southern District of Illinois lending support for deference to plaintiff's choice of forum.

Furthermore, the venue statute, 28 U.S.C. § 1400(b), places much significance on these sales as they equate to acts of infringement and establish a strong connection to the Southern District of Illinois. Additionally, Apple has pervasive contacts with the Southern District of Illinois through its highly interactive iTunes website and Apple's customer website. Numerous residents from the Southern District of Illinois purchase Apple products from the website and/or enter into license agreements (each license agreement is a separate contract with a citizen from the Southern District of Illinois) with Apple to use iTunes. While DBC acknowledges that the venue statute may allow other districts to have proper venue as well, it is Apple's duty as the movant on this issue to strongly prove that the Northern District of California is a more convenient forum than the Southern District of Illinois. Apple has not done so.

**B.      Apple Does Not Prove That the Location of Key Witnesses and Documents in Various Jurisdictions Outside of California Weigh Strongly in Favor of Transfer**

**1.      Key witnesses located outside California**

Apple contends that because the bulk of its witnesses and documents are located in California that the Northern District of California is a more convenient venue. However, Apple

does not consider that DBC's non-party witnesses are located outside California, thus deflating its contention that California is the most convenient forum.[8]

Significantly, two key non-party witnesses for DBC are located in Texas, which is closer to Illinois than California. Apple fails to recognize in its motion that Michael Steffano, the inventor of the '306 patent at issue, resides in Austin, Texas. Mr. Steffano will undoubtedly be called as a key non-party witness for DBC testifying on such significant issues as the conception of the subject matter and reduction to practice of the invention in the '306 patent; the prosecution of the '306 patent; infringement by Apple; validity, enforceability, and non-obviousness of the '306 patent; and damages. Also, William Hulsey, the patent attorney who prosecuted the '306 with the United States Patent and Trademark Office, will likely testify on similar issues as a non-party witness. Hulsey is also located in Austin, Texas. Thus, while arguably some of Apple's key employee witnesses are located in California, there are key non-party witnesses located outside of California.

Apple also insists that it would be "burdened because it would have to pay for these witnesses' airfare, hotel, and meals" and that "productivity at Apple would suffer." *See* Docket No. 25 at 11. However, Apple's position is a bit exaggerated. Certainly, it is likely that Apple will incur some additional expenses for travel to Illinois if its motion to transfer is denied. Yet, as the relevant witnesses and sources of proof appear to be scattered throughout several jurisdictions, it is inevitable that someone must incur travel costs regardless of where the case is litigated. Case law makes clear that, "transfer is inappropriate if it merely transforms an

---

[8] The sheer number of Apple's witnesses in California is also not a determinative factor for courts when considering whether a particular venue is more convenient to the witnesses. *See Vandeveld*, 877 F.Supp. at 1168 ("A court should not limit its investigation to a review of which party can produce the longer witness list"). Rather, courts have found that it is more appropriate and beneficial to "look to the nature and quality of the witnesses' testimony with respect to the issues in the case." *Id.* This is especially true here where Apple as a billion dollar company is in the best position (i.e., not inconvenienced) to provide for travel for its employee witnesses.

inconvenience for one party into an inconvenience for another party." *Vandeveld*, 877 F.Supp. at 1167.

Lastly, Apple has admitted that it is not strongly inconvenienced by litigating outside of the Northern District of California. *See Apple Computer v. Unova*, 2003 WL 22928034 at *3. In that case, Apple asserted contrary arguments to the case at hand by arguing that there was insufficient reason to move the case from Delaware as the Defendants were large corporations with substantial resources who would not be substantially burdened by travel to Delaware. *Id.*

Considering the location of witnesses in various jurisdictions and that Apple cannot show that the costs of travel incurred by the parties and non-parties as a group would be significantly reduced by transferring the case, Apple does not meet its burden of proof that California is a more convenient venue.

### 2.     Sources of proof are available via electronic means

Apple maintains that simply because many of its documents concerning the design, operation and marketing of the accused product are found in California, that this factor weighs in favor of transfer to the Northern District of California. First and foremost, with today's advanced technology, sources of proof are easily accessible via computers, e-mail, and the Internet, and thus, the actual physical location of materials becomes a non-issue. *See Stock v. Integrated Health Plan, Inc.*, No. 06-CV-00215-DRH, 2006 WL 3420289, *3 (S.D.Ill. Nov. 28, 2006)(Court agreed that the "presence of documents in Florida is not a persuasive factor in these modern days of photocopying, faxing and other electronic means of retrieval" and therefore did not find that this factor weighed in favor of transfer); *see also Sitrick v. Freehand Systems, Inc.*, No. 02 C 1568, 2003 WL 1581741, *3 (N.D.Ill. March 27, 2003) quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)("Progress in communications and

transportation has made defense of a lawsuit in a foreign tribunal less burdensome"). As Apple is a computer company familiar with much technology and software, it is very likely that a majority of Apple's relevant materials are stored in electronic format already and may be easily sent via electronic means thereby imposing little burden on Apple. Thus, the fact that materials are readily accessible and easily transferable weighs against the Northern District of California.

The DBC non-party witnesses named above also will have significant materials for discovery such as prosecution histories, U.S. Patent and Trademark information, damages materials, licensing agreements and correspondence, and development and marketing information. These materials are presumably located in Texas and must be sent via electronic means or otherwise when deemed discoverable, such that again, the Northern District of California is no more convenient than the Southern District of Illinois.

Due to the technological versatility of Apple, the presence of some materials in California – with many other documents found outside of California – does not weigh in favor of transfer and Apple has not proved otherwise.

**C.     The Interests of Justice Do Not Weigh in Favor of Apple's Preferred Venue**

As the "interest of justice" is a separate component of a § 1404(a) analysis, it "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). "Public interest factors that may warrant transfer include: 1) the court's familiarity with applicable law; 2) desirability of resolving controversies in their locale; 3) the relation of the community to the occurrence at issue; 4) the congestion of the respective court dockets and prospects for an earlier trial." *Symons Corp. v. Southern Forming and Supply, Inc.*, 954 F.Supp. 184, 187 (N.D.Ill. 1997).

In this case, the interests of justice argued by Apple do not weigh in favor of transferring this case from the Southern District of Illinois.

### 1. The Southern District of Illinois has a strong desire to resolve controversies with such a significant presence in its economy and marketplace

Apple asserts that based on Apple's activities and location in the Northern District of California, that this case should be litigated there. Yet, Apple's products, including the accused product, are offered for sale and sold in the Southern District of Illinois as well, via authorized resellers and the Internet. In fact, Apple has at least 14 authorized resellers of all Apple products in the Southern District of Illinois.[9] With the prevalence of Apple products in the Southern District of Illinois, the likelihood that numerous Illinois citizens purchase and use those products increases greatly. The citizens of the Southern District of Illinois therefore have a heightened interest in cases involving Apple's products and accused acts of infringement.

Significantly, case law finds that local interest in adjudicating a dispute exists when at least some of the alleged actions of infringement occurred in the district. *See Candela Corp. v. Palomar Medical Technologies, Inc.*, Slip Copy, No. 9:06-CV-277, 2007 WL 738616, *5 (E.D.Tex. Feb. 22, 2007)(Court found this factor weighs in favor of not transferring venue of the case). Here, Apple has significant sales of infringing product in this jurisdiction. Thus, Illinois has an interest in the outcome of the case. While the Northern District of California may also have an interest in adjudicating the case in its locale due to sales in that district, the burden is on Apple to prove that its requested transferee venue is substantially more convenient than the current venue. Apple is unable to do so.

### 2. Timing for resolution of civil cases in both districts is similar, and therefore does not weigh in favor of transfer

---

[9] *See* **Exhibit D**, list of authorized resellers within zip code 62201 found on the Apple website.

Apple cites to statistics demonstrating that the median time intervals for disposition of all types of civil cases in the Northern District of California and Southern District of Illinois "will likely be resolved just as quickly and efficiently in the Northern District of California." *See* Docket No. 25 at 13. Yet, there must be a clear showing of factors that weigh in favor of the transfer, and not simply that make each venue equivalent. *See Vandeveld,* 877 F.Supp. at 1167. Comparable resolution times make the two districts even for interests of justice, and thus there is no strong convenience factor weighing in favor of the Northern District of California as Apple is required to prove for transfer.

### 3.    Material events occur in California and Illinois

In this case, Apple contends that the situs of the material events generally is where the alleged infringing activities occurred and because Apple's principal place of business is in the Northern District of California, this factor favors transfer. However, as evidenced above, infringing activities took place in Illinois, and according to the venue statute, 28 U.S.C. § 1400(b), this makes the Southern District of Illinois a proper venue. The fact that there may be increased sales in the Northern District of California (although figures are unavailable at this point) as compared to the Southern District of Illinois, does not counteract the language of the venue statute nor does it prove that the Northern District of California is a more convenient forum.

Additionally, when sales of accused products occur within the present venue, those sales amount to acts of infringement in the venue and weigh against transfer of venue. *See Mangosoft Intellectual Property, Inc. v. Skype Technologies SA, et al.*, Slip Copy, No. 2:06-CV-390 (TJW), 2007 WL 2008899, *2 (E.D.Tex. July 5, 2007)(Alleged products infringing patent not disputed to be sold in district weighed against transfer); *see also Aerielle, Inc. v. Monster Cable Products,*

*Inc.*, Slip Copy, No. 2:06-CV-382 (TJW), 2007 WL 951639, *2 (E.D.Tex. March 26, 2007)(Although both parties located in California and outside the current venue, the fact that defendant's alleged infringing products sold through retailers in current district weighed against transfer).

Thus, as infringing activities, in the way of sales, took place in Illinois, Apple's argument concerning the situs of infringing activities in California does nothing to support that California is a more convenient forum.  Apple has not met its burden concerning this factor.

## CONCLUSION

For the foregoing reasons, DBC respectfully requests that Apple's Motion to Transfer Venue to the Northern District of California, San Jose Division be denied in its entirety.

Respectfully submitted,
DIGITAL BACKGROUND CORPORATION

By its attorneys,
SIMMONSCOOPER LLC


Dated:  February 25, 2008          By: s/Paul A. Lesko
Paul A. Lesko
Stephen C. Smith
Katharine A. Wark
707 Berkshire Blvd.
P.O. Box 521
East Alton, Illinois 62024
(618) 259-2222
(618) 259-2251 – *facsimile*
plesko@simmonscooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on this February 25, 2008, the foregoing was filed electronically with the Court to be served by operation of the Court's electronic filing system upon the following:

**James F. Valentine**
valentinej@howrey.com
**Jason Anderson**
andersonJ@howrey.com
**Ryan Moran**
moranr@howrey.com
**Christina M. Finn**
finnc@howrey.com

**Greg G. Gutzler**
greg.gutzler@husch.com
**Dutro E. Campbell, II**
bruce.campbell@husch.com
**Joseph P. Conran**
joe.conran@husch.com

and I hereby certify that on this February 25, 2008, I caused to be mailed by United States Postal Service, postage pre-paid, the document to the following non-registered participant:

Henry C. Bunsow, Esq.
Howrey LLP
525 Market St., Suite 3600
San Francisco, CA 94105

s/ Paul A. Lesko

# EXHIBIT A

Financial Statements
Data Summary

# Apple Reports Fourth Quarter Results

## Quarterly Mac Sales Set New Record
## Quarterly iPhone Sales Exceed One Million

CUPERTINO, California—October 22, 2007—Apple® today announced financial results for its fiscal 2007 fourth quarter ended September 29, 2007. The Company posted revenue of $6.22 billion and net quarterly profit of $904 million, or $1.01 per diluted share. These results compare to revenue of $4.84 billion and net quarterly profit of $542 million, or $.62 per diluted share, in the year-ago quarter. Gross margin was 33.6 percent, up from 29.2 percent in the year-ago quarter. International sales accounted for 40 percent of the quarter's revenue.

Apple shipped 2,164,000 Macintosh® computers, representing 34 percent growth over the year-ago quarter and exceeding the previous quarterly record for Mac® shipments by 400,000. The Company sold 10,200,000 iPods during the quarter, representing 17 percent growth over the year-ago quarter. Quarterly iPhone™ sales were 1,119,000, bringing cumulative fiscal 2007 sales to 1,389,000.

"We are very pleased to have generated over $24 billion in revenue and $3.5 billion in net income in fiscal 2007," said Steve Jobs, Apple's CEO. "We're looking forward to a strong December quarter as we enter the holiday season with Apple's best products ever."

"Apple ended the fiscal year with $15.4 billion in cash and no debt," said Peter Oppenheimer, Apple's CFO. "Looking ahead to the first quarter of fiscal 2008, we expect revenue of about $9.2 billion and earnings per diluted share of about $1.42."

Apple will provide live streaming of its Q4 2007 financial results conference call utilizing QuickTime®, Apple's standards-based technology for live and on-demand audio and video streaming. The live webcast will begin at 2:00 p.m. PDT on Monday, October 22, 2007 at www.apple.com/quicktime/qtv/earningsq407/ and will also be available for replay.

This press release contains forward-looking statements about the Company's estimated revenue and earnings per share. These statements involve risks and uncertainties, and actual results may differ. Risks and uncertainties include potential litigation and government enforcement actions that may result from the matters investigated by the special committee of the board of directors and the restatement of the Company's consolidated financial statements; unfavorable results of legal proceedings; the effect of competitive and economic factors, and the Company's reaction to those factors, on consumer and business buying decisions with respect to the Company's products; war, terrorism, public health issues, and other circumstances that could disrupt supply, delivery, or demand of products; continued competitive pressures in the marketplace; the Company's reliance on sole service providers for iPhone in the U.S., U.K., Germany and France; the continued availability on acceptable terms of certain components and services essential to the Company's business currently obtained by the Company from sole or limited sources; the ability of the Company to deliver to the marketplace and stimulate customer demand for new programs, products, and technological innovations on a timely basis; the effect that product transitions, changes in product pricing or mix, and/or increases in component costs could have on the Company's gross margin; the effect that product quality problems could have on the Company's sales and operating profits; the inventory risk associated with the Company's need to order or commit to order product components in advance of customer orders; the effect that the Company's dependency on manufacturing and logistics services provided by third parties may have on the quality, quantity or cost of products manufactured or services rendered; the Company's dependency on the performance of distributors and other resellers of the Company's products;

the Company's reliance on the availability of third-party digital content; and the potential impact of a finding that the Company has infringed on the intellectual property rights of others. More information on potential factors that could affect the Company's financial results is included from time to time in the Company's public reports filed with the SEC, including the Company's Form 10-K for the fiscal year ended September 30, 2006, its Forms 10-Q for the quarters ended December 30, 2006, March 31, 2007, and June 30, 2007, and its Form 10-K for the year ended September 29, 2007 to be filed with the SEC. The Company assumes no obligation to update any forward-looking statements or information, which speak as of their respective dates.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Today, Apple continues to lead the industry in innovation with its award-winning computers, OS X operating system and iLife and professional applications. Apple is also spearheading the digital media revolution with its iPod portable music and video players and iTunes online store, and has entered the mobile phone market this year with its revolutionary iPhone.

**Press Contacts:**
Steve Dowling
(408) 974-1896
dowling@apple.com

**Investor Relations Contacts:**
Nancy Paxton
(408) 974-5420
paxton1@apple.com

Joan Hoover
(408) 974-4570
hoover1@apple.com

NOTE TO EDITORS: For additional information visit Apple's PR website, or call Apple's Media Helpline at (408) 974-2042.

trademarkstatementchangesfromtimetotime



EXHIBIT B



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22928034 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

CApple Computer, Inc. v. Unova, Inc..
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
APPLE COMPUTER, INC., Plaintiff,
v.
UNOVA, INC. Intermec Technologies Corporation,
Cincinnati Machine of Unova, Inc., and Unova
Industrial Automation Systems, Inc. Defendants.
**No. Civ.A. 03-101-JJF.**

Nov. 25, 2003.

Josy W. Ingersoll, and John W. Shaw, of Young
Conaway Stargatt & Taylor, LLP, Wilmington,
Delaware. Robert G. Krupka, Alexander F.
MacKinnon, and Shannon M. Hansen, of Kirkland &
Ellis, Los Angeles, California, for Plaintiff Apple
Computer, Inc., of counsel.
Jack B. Blumenfeld, and Sean T. O'Kelly, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware.
Frederick A. Lorig, and David M. Kleiman, of Bright
& Lorig, Los Angeles, California, for Defendants
Unova, Inc. and Intermec Technologies Corporation,
of counsel.

### MEMORANDUM OPINION

FARNAN, J.
\*1 Presently before the Court are the Motion to
Strike Plaintiff's Amended and Supplemental
Complaint (33-1), Motion to Transfer (D.I.12-1), and
Motion to Dismiss (14-1) filed by Defendants
UNOVA, Inc. ("Unova") and Intermec Technologies
Corporation ("Intermec"). For the reasons discussed,
Defendants' motions will be denied.

### BACKGROUND

Apple Computer, Inc., ("Apple") filed suit
against the Defendants alleging infringement of
several Apple patents. Unova and Intermec
responded by filing the instant Motion to Dismiss and
Motion to Transfer. Apple then filed an amended
complaint that added supplemental allegations and
claims of patent infringement against Cincinnati
Machine of Unova, Inc. ("CMU"), and Unova

Industrial Automation Systems, Inc. ("UIAS").
Unova and Intermec filed a motion to strike the
amended complaint. Unova is currently involved in a
patent infringement lawsuit against Apple in the
Central District of California.

Apple is a California corporation with its
principal place of business in northern California.
Intermec, CMU, and UIAS are subsidiaries of Unova.
Unova is a Delaware corporation, has its principal
place of business in California, and is in the process
of moving its headquarters to Seattle. Intermec is a
Washington corporation with its principal place of
business in Washington. CMU and UIAS are
Delaware corporations with their principal places of
business in Ohio and Michigan respectively.

### DISCUSSION

I. The Legal Standards

*A. Motion to Strike*

Federal Rule of Civil Procedure 12(f), in relevant
part, states that "[a] court may order stricken ... any
redundant, immaterial, impertinent, or scandalous
matter."However, such motions are generally
disfavored unless the matter is clearly irrelevant to
the litigation or will prejudice the adverse party.
*SeeRechsteiner v. Madison Fund, Inc.,* 75 F.R.D.
499, 505 (D.Del.1977).

*B. Motion to Transfer*

"For the convenience of parties and witnesses, in
the interest of justice, a district court may transfer
any civil action to any other district or division where
it might have been brought."28 U.S.C. § 1404(a). In
the Third Circuit, decisions on motions to transfer are
guided by the private and public factors announced in
*Jumara v. State Farm Ins. Co.* 55 F.3d 873, 879 (3d
Cir.1995). When determining whether transfer is
warranted, district courts must balance all of the
relevant factors and respect that a plaintiff's choice of
forum is entitled to substantial deference and should
not be lightly disturbed when it is due to legitimate,
rational concerns. *Id.* at 883.The burden is upon the

movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999).

## C. *Motion to Dismiss*

\*2 Federal Rule of Civil Procedure 12(b)(6) allows a claim to be dismissed for "failure to state a claim upon which relief can be granted."The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party."*Strum v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987), 835 F.2d at 1011. A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

## II. Assertions of the Parties

### A. *Motion to Strike*

Intermec and Unova assert that the claims against Cincinnati Machine, and UIAS were only added in an attempt to maintain forum in Delaware. Intermec and Unova assert that Apple's complaint could not be amended without leave of court and that such leave was not granted.

Apple contends that under Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") it had the right, without leave of court, to add UIAS and CMU and to amend its allegations based on facts in existence before the filing of the original complaint. As to its other amendments, Apple requests leave under Federal Rule of Civil Procedure 15(d) ("Rule 15(d)") to the extent leave is required. Apple makes this request in its briefs and has not filed a motion seeking leave. Apple contends that allowing its amendments will not unfairly prejudice the defendants.

### B. *Motion to Transfer*

Unova and Intermec assert that the parties in the instant case have no substantial connection to Delaware and that the case should be moved to the Central District of California, a forum more convenient for the parties and more related to the action. Unova and Intermec contend that because Delaware is not the forum closest to Apple's residence or principal place of business, Apple will be less inconvenienced by a transfer and assert that Apple only chose the current forum for tactical reasons. Defendants allege that the case will be more quickly resolved in the Central District of California and that, because the parties already have litigation between them pending in the Central District of California, the case will be more efficiently heard in that District. Unova and Intermec contend that CMU and UIAS were not properly joined to this case and should not be considered in determining whether to transfer the case.

Unova and Intermec assert forum is appropriate in California and have asserted facts indicating that all parties are subject to personal jurisdiction in California. Unova and Intermec assert that the Central District of California is closer to the headquarters of Unova, Apple, and Intermec.

\*3 Unova and Intermec assert that the Central District of California will provide greater access to witnesses. Unova and Intermec contend that the patents involved have inventors most of whom are in California and none of whom are in Delaware. According to Unova and Intermec, no witness with knowledge of Apple's use of the inventions or licensing of the patents is in Delaware. Apple and Unova contend that unless a court has personal jurisdiction over a witness, that witness's presence at trial cannot be ensured. Apple and Unova contend that therefore the presence of more witnesses can be ensured by moving the case to California.

Unova and Intermec assert that nothing concerning Apple's inventions is located in Delaware. Unova and Intermec contend that more sales of the allegedly infringing products have occurred in California than in Delaware and that the products are manufactured far from Delaware. Unova and Intermec contend that no documents on the design,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22928034 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

manufacture, use, or sale of the products accused to violate the patents are located in or near Delaware.

Apple asserts that, as the plaintiff, it is entitled to deference on its choice of forum and that it has chosen an appropriate forum. Apple asserts that, with the exception of Intermec, three of the four defendants are Delaware corporations and are properly sued in Delaware even if not conducting business in the state. Apple asserts that Unova will be headquartered in Washington and not California by the time this case reaches trial.

Apple asserts that no location will be ideal for the convenience of the witnesses who are dispersed throughout the United States and France. Apple contends that Defendants have not provided evidence establishing that any witness critical to its case will be unavailable for trial in Delaware. Apple contends that the key witnesses on infringement are in Washington, Michigan, and Iowa, and not in California.

Apple contends that this case is unrelated to the one pending in the Central District of California and that moving the case would not produce improvements in judicial economy. Apple contends that the disposition of this case would occur at essentially the same time in Delaware as in California.

Apple asserts that there is not sufficient reason to justify moving this case. Apple asserts that patent law does not implicate local interests and that local interest should not be a factor in deciding whether to move this case. Apple asserts that Delaware's expertise and experience in patent law also point to keeping the case in Delaware. Apple asserts that Defendants are large corporations with substantial resources who will not be substantially burdened by travel to Delaware.

### C. *Motion to Dismiss*

Unova contends that all of Apple's claims against it should be dismissed; Intermec contends that Apple's claims against it alleging indirect infringement should be dismissed. Unova asserts that it is a holding company that does not make, use, sell, or import any of the accused products and that has not contributed to or induced infringement. Unova

asserts that Apple has neither alleged that Unova sold infringing products nor alleged that Unova should be held liable for Intermec's sale of allegedly infringing products.

\*4 Unova and Intermec contend that Apple has not and can not set forth a basis for its allegations of induced infringement. Unova and Intermec contend they were unaware of the patents at issue in the case before the lawsuit was filed and have introduced an affidavit in support of this contention.

Apple asserts that its amended complaint has cured any defects in the original complaint and made the motion to dismiss moot. Apple asserts that the motion to dismiss targets the non-operative former complaint and that a ruling on this complaint would be, in effect, an advisory opinion. Apple asserts that it has sufficiently pled its causes of action.

Apple asserts that no discovery has occurred in this case and that neither dismissal nor summary judgment (should the Court choose to convert the motion to dismiss) is appropriate. Apple asserts that Unova's website and public declarations indicate that Unova makes and sells products. Apple asserts that Intermec also makes and sells products. Apple asserts that Unova and Intermec both have products infringing on at least one claim of each patent at issue in this action and have been actively and intentionally inducing their customers and, in the case of Unova, subsidiaries, to use the infringing products. Apple asserts that all of the facts relevant to infringement are in Unova and Intermec's possession and that it is entitled to discovery as to its claims. Apple contends that there are material issues of fact that preclude summary judgement.

### III. Analysis

### A. *Motion to Strike*

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]"FED. R. CIV. P. 15(A)."Neither a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a)."*Centifanti v. Nix*, 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). Apple's amended complaint was filed before Defendants made a responsive pleading and therefore the Court

concludes that Apple was generally entitled to amend its complaint.

Even if a responsive pleading has not been filed, Court approval is required for "supplemental pleading[s] setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."FED. R. CIV. P. 15(D)."[A] supplemental pleading adds to the original some matter occurring after the beginning of the action or after a responsive pleading has been filed."*Klee v. Pittsburgh & W.V. Ry. Co.*, 22 F.R.D. 252, 254 (W.D.Pa.1958). Apple's claims alleging knowledge based on information conveyed in the original complaint are clearly supplemental pleadings.

Additionally, Federal Rule of Civil Procedure 21 ("Rule 21"), in relevant part, holds that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."FED. R. CIV. P. 15(A). Some courts have held that Rule 21 supersedes Rule 15 and requires court permission before parties are added. *See,e.g.,Renard v. Dillman,* 1998 U.S.App. LEXIS 38626 (2nd Cir.1998). Other courts, including courts in this District, have indicated that, before a responsive pleading has been issued, parties may be added even without leave to amend. *See,e.g.,Standard Chlorine of Del., Inc. v. Sinibaldi,* 821 F.Supp. 232, 259 (D.Del.1992). The Court has not considered on the issue and need not do so today.

*5 Apple has requested leave to amend to the extent its pleading requires such leave. "[I]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive[ ], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party [or by virtue of allowance of the amendment, [or] futility of [the] amendment," leave to amend is to be given freely and is entrusted to the discretion of the court. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court finds that Defendants will not suffer unfair prejudice from granting leave to amend. While Apple should have made its request more formally, the Court will grant Apple leave to amend to the extent such leave is now required.

B. *Motion to Transfer*

*Jumara v. State Farm Ins. Co.* dictates that the Court examine the private and public interest in determining whether a transfer is warranted. 55 F.3d 873, 879 (3d Cir.1995).

The Court finds that the asserted public advantages of moving the case to the Central District of California are insufficient. The parties are already involved in a dispute in the Central District of California; however, the California action is unrelated to the claims of the instant action and involves multiple parties not joined in this case. Also, on comparing the jurisdictional statistics for the Central District of California and the District of Delaware, the Court finds that moving the case to the Central District of California will produce little advantage in expediency and in the allocation of judicial resources. Neither California nor Delaware has a local interest in the decision of this case.

The Court also finds that the private factors do not favor transfer. While more witnesses can be subpoenaed in California, a particular need to subpoena these witnesses has not been demonstrated. The parties are predominantly located closer to California and neither the parties nor the case have strong ties to Delaware. However, the parties as a whole are not located close to the Central District of California and all of the parties are sophisticated and substantial enough to litigate in Delaware. Apple is entitled to deference on its choice of forum, and therefore the Court concludes that Unova and Intermec's Motion to Transfer must be denied.

C. *Motion to Dismiss*

Initially the Court observes that Apple's amended complaint has made parts of Unova and Intermec's motion to dismiss moot. In its Amended Complaint, Apple has alleged that, since the initial pleading, Intermec and Unova were aware of Apple's patents. In this regard Apple has plead a claim for inducement of infringement and contributory infringement.

Unova contends that it does not make, use, sell, or offer for sale any of the accused products and is entitled to the dismissal of Apple's claims. Apple has pled the opposite and has stated a claim for infringement. The parties have not yet engaged in discovery, and, at this early stage, factual

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22928034 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

determinations are not appropriate. If Unova is correct in its contentions about itself and about Apple's motives in filing suit, summary judgment and sanctions may later be appropriate. At present, however, the Court will deny Unova and Intermec's motion to dismiss.

## CONCLUSION

*6 For the reasons discussed, the Court has denied the Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1), Motion to Transfer (D.I.12-1), and Motion to Dismiss (14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation. An Order consistent with this Memorandum Opinion will be entered.

## *ORDER*

At Wilmington, this 25th day of November, 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1) The Motion to Strike Plaintiff's Amended and Supplemental Complaint (33-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*
2) The Motion to Transfer (D.I.12-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*
3) The Motion to Dismiss (D.I.14-1) filed by Defendants UNOVA, Inc. and Intermec Technologies Corporation is *DENIED.*

D.Del.,2003.
Apple Computer, Inc. v. Unova, Inc.
Not Reported in F.Supp.2d, 2003 WL 22928034 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Form 10-K

(Mark One)

☒  ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended September 29, 2007

or

☐  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ _____ to ____ _____

Commission file number 000-10030

## APPLE INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **California** | **942404110** |
| (State or other jurisdiction | (I.R.S. Employer |
| of incorporation or organization) | Identification No.) |
| **1 Infinite Loop** | |
| **Cupertino, California** | **95014** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **(408) 996-1010**

Securities registered pursuant to Section 12(b) of the Act:

| | |
|---|---|
| Common Stock, no par value | The NASDAQ Global Select Market |
| (Title of class) | (Name of exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☒

Note—Checking the box above will not relieve any registrant required to file reports pursuant to Section 13 or 15(d) of the Exchange Act from their obligations under those Sections.

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (section 229.405 of this chapter) is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒             Accelerated filer ☐             Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐ No ☒

The aggregate market value of the voting and non-voting stock held by non-affiliates of the registrant, as of March 31, 2007, was approximately $74,499,000,000 based upon the closing price reported for such date on the NASDAQ Global Select Market. For purposes of this disclosure, shares of common stock held by persons who hold more than 5% of the outstanding shares of common stock and shares held by executive officers and directors of the registrant have been excluded because such persons may be deemed to be affiliates. This determination of executive officer or affiliate status is not necessarily a conclusive determination for other purposes.

875,540,274 shares of Common Stock Issued and Outstanding as of November 2, 2007

**Backlog**

In the Company's experience, the actual amount of product backlog at any particular time is not a meaningful indication of its future business prospects. In particular, backlog often increases in anticipation of or immediately following new product introductions as dealers anticipate shortages. Backlog is often reduced once dealers and customers believe they can obtain sufficient supply. Because of the foregoing, backlog should not be considered a reliable indicator of the Company's ability to achieve any particular level of revenue or financial performance.

**Environmental Laws**

Compliance with federal, state, local, and foreign laws enacted for the protection of the environment has to date had no material effect on the Company's capital expenditures, earnings, or competitive position. In the future, these laws could have a material adverse effect on the Company.

Production and marketing of products in certain states and countries may subject the Company to environmental and other regulations including, in some instances, the requirement to provide customers the ability to return product at the end of its useful life, and place responsibility for environmentally safe disposal or recycling with the Company. Such laws and regulations have recently been passed in several jurisdictions in which the Company operates including various countries within Europe and Asia, certain Canadian provinces and certain states within the U.S. Although the Company does not anticipate any material adverse effects in the future based on the nature of its operations and the thrust of such laws, there is no assurance that such existing laws or future laws will not have a material adverse effect on the Company's financial condition or operating results.

**Employees**

As of September 29, 2007, the Company had approximately 21,600 full-time equivalent employees and an additional 2,100 temporary equivalent employees and contractors.

**Available Information**

The Company's Annual Report on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K, and amendments to reports filed pursuant to Sections 13(a) and 15(d) of the Securities Exchange Act of 1934, as amended, are filed with the U.S. Securities and Exchange Commission ("SEC"). Such reports and other information filed by the Company with the SEC are available on the Company's website at http://www.apple.com/investor when such reports are available on the SEC website. The public may read and copy any materials filed by the Company with the SEC at the SEC's Public Reference Room at 100 F Street, NE, Room 1580, Washington, DC 20549. The public may obtain information on the operation of the Public Reference Room by calling the SEC at 1-800-SEC-0330. The SEC maintains an Internet site that contains reports, proxy, and information statements and other information regarding issuers that file electronically with the SEC at http://www.sec.gov. The contents of these websites are not incorporated into this filing. Further, the Company's references to the URLs for these websites are intended to be inactive textual references only.

**Item 1A. Risk Factors**

Because of the following factors, as well as other factors affecting the Company's financial condition and operating results, past financial performance should not be considered to be a reliable indicator of future performance, and investors should not use historical trends to anticipate results or trends in future periods.

*The matters relating to the Company's past stock option practices and the restatement of the Company's consolidated financial statements may result in additional litigation and government enforcement actions.*
The findings from the Company's investigation into its past stock option granting practices and the resulting restatement of prior financial statements in its 2006 Form 10-K have exposed the Company to greater risks associated with litigation, regulatory proceedings and government enforcement actions. As

13

# EXHIBIT D





62201    All Products ▼

Advanced Search

Locations near East Saint Louis IL

A. **Radioshack**
699 State Route 203
East St Louis, IL 62201

B. **Radioshack**
1274 Camp Jackson Rd
Cahokia, IL 62206

C. **Radioshack**
4135 Lindell Blvd
St Louis, MO 63108

D. **Radioshack**
4220 S Broadway
St Louis, MO 63111

E. **Radioshack**
3511 Bamberger Ave
St Louis, MO 63116

F. **AT&T**
3453 Nameoki Rd
Granite City, IL 62040

G. **Radioshack**
3801 Nameoki Rd
Granite City, IL 62040

H. **AT&T**
1146 Collinsville Crossing
Collinsville, IL 62234

Next

**Buy Online.**

Open 24-7, the Apple Store online lets you shop anytime from the comforts of your favorite chair. From built-to-order Macs to iPods to printers to cameras, you'll find everything you need and more at the Apple Store online.

**Shop Retail.**

The Apple Store is the best place to learn everything there is to know about the Mac or iPod. Let the Mac Specialists answer all your questions. Visit the Genius Bar for one-on-one support and advice. Attend free workshops — for beginners and pros — and learn how to bring your ideas to life.

Share your feedback with us and help make the Store Locator even better.

**Find a Service Provider.**

If your Mac or iPod needs service, please visit the Genius Bar at your local Apple Store or an Apple Authorized Service Provider. The Mac Geniuses or Service Provider can help identify the nature of your problem and, if a hardware repair is required, explain to you all of your available service options.

Important: Please contact the service provider to phone/call for confirm that its located in you-need offered at the location.





62201   All Products ▼

Advanced Search

Locations near East Saint Louis, IL

**Radioshack Store - 016638**
129 St Clair Sq
Fairview Hts, IL 62208

**Radioshack**
5720 N Belt W Ste 22
Belleville, IL 62226

**Guitar Center 366**
79 Ludwig Dr
Fairview Heights, IL 62208

**Circuit City Store-0505**
55 Ludwig Dr
Fairview Heights, IL 62208

**AT&T**
10890 Lincoln Trail
Fairview Heights, IL 62208

**Radioshack**
3517 Hampton Ave
St Louis, MO 63139

**AT&T**
8 Saint Clair Sq
Fairview Heights, IL 62208

**Ultimate Electronics**
5925 N Illinois St
Fairview Heights, IL 62208

Previous | Next

### Buy Online.

Open 24-7, the Apple Store online lets you shop anytime from the comforts of your favorite chair. From built-to-order Macs to iPods to printers to cameras, you'll find everything you need and more at the Apple Store online.

### Shop Retail.

The Apple Store is the best place to learn everything there is to know about the Mac or iPod. Let the Mac Specialists answer all your questions. Visit the Genius Bar for one-on-one support and advice. Attend free workshops — for beginners and pros — and learn how to bring your ideas to life.

Share your feedback with us and help make the Store Locator even better.

### Find a Service Provider.

If your Mac or iPod needs service, please visit the Genius Bar at your local Apple Store or an Apple Authorized Service Provider. The Mac Geniuses or Service Provider can help identify the nature of your problem and, if a hardware repair is required, explain to you all of your available service options.

**Important:** Please call ahead to confirm product availability, as products may vary by location.

62201   [All Products ▼]   Search

Advanced Search

Locations near East Saint Louis, IL



**A**  **Mac Headquarters**
7120 Manchester Rd
St Louis, MO 63143

**B**  **Radioshack**
501 Belt Line Rd
Collinsville, IL 62234

**C**  **Radioshack**
10111 Lewis And Clark Blvd
St Louis, MO 63136

**D**  **Radioshack**
7261 Watson Rd
St Louis, MO 63119

**E**  **Wal-mart Store-1418**
1530 West Highway 50
Ofallon, IL 62269

**F**  **Falabella**
Alberto Solari 1400
La Serena, SA 00000

**G**  **Falabella**
1 Norte # 1485
Talca, SA 90000

**H**  **K-tronix Americas**
Plaza Las Americas Local 1723
Bogota, 03 00000

Previous | Next



Map data ©2008 Tele Atlas - Terms of Use

### Buy Online.

Open 24-7, the Apple Store online lets you shop anytime from the comforts of your favorite chair. From built-to-order Macs to iPods to printers to cameras, you'll find everything you need and more at the Apple Store online.

### Shop Retail.

The Apple Store is the best place to learn everything there is to know about the Mac or iPod. Let the Mac Specialists answer all your questions. Visit the Genius Bar for one-on-one support and advice. Attend free workshops — for beginners and pros — and learn how to bring your ideas to life.

Share your feedback with us and help make the Store Locator even better.

### Find a Service Provider.

If your Mac or iPod needs service, please visit the Genius Bar at your local Apple Store or an Apple Authorized Service Provider. The Mac Geniuses or Service Provider can help identify the nature of your problem and, if a hardware repair is required, explain to you all of your available service options.

Important: Please check the website phone number or call to confirm the service hours before visiting the store.





62201     [ All Products ▼ ]     (search)

**Advanced Search**

Locations near East Saint Louis, IL

**A**  Pcbox E.u.
Centro Alta Tecnologia Cr 15
Bogota, 03 00000

**B**  Dpi Pro Video
8008 Carondelet Ave
Saint Louis, MO 63105

**C**  AT&T
5 Brentwood Promenade Court
Brentwood, MO 63144

**D**  Zoom Shop - Saint Louis Galleria
1550 St Louis Galleria
Saint Louis, MO 63117

**●**  Apple Store St. Louis Galleria
2401 Saint Louis Galleria
Saint Louis, MO 63117

**F**  Circuit City Store-3767
1585 S Brentwood Blvd
Brentwood, MO 63144

**G**  AT&T
8235 Clayton Rd
Saint Louis, MO 63117

**H**  Radioshack
2518 S Brentwood Blvd
Brentwood, MO 63144

Previous

Map data ©2008 Tele Atlas - Terms of Use

### Buy Online.

Open 24-7, the Apple Store online lets you shop anytime from the comforts of your favorite chair. From built-to-order Macs to iPods to printers to cameras, you'll find everything you need and more at the Apple Store online.

### Shop Retail.

The Apple Store is the best place to learn everything there is to know about the Mac or iPod. Let the Mac Specialists answer all your questions. Visit the Genius Bar for one-on-one support and advice. Attend free workshops — for beginners and pros — and learn how to bring your ideas to life.

Share your feedback with us and help make the Store Locator even better.

### Find a Service Provider.

If your Mac or iPod needs service, please visit the Genius Bar at your local Apple Store or an Apple Authorized Service Provider. The Mac Geniuses or Service Provider can help identify the nature of your problem and, if a hardware repair is required, explain to you all of your available service options.

Important: Please contact the service provider please directly to confirm that the service provider has obtained at the services.