**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION**

DIGITAL BACKGROUND CORPORATION,   )
          )
        Plaintiff,    )
          )
    v.          )    Case No. 3:07-CV-00803-JPG-CJP
          )
APPLE, INC.          )
          )
        Defendant.    )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    DBC FAILS TO REFUTE THAT THE PRIVATE INTEREST FACTORS
WARRANT A TRANSFER ..........................................................................................1

    A.    DBC Fails To Refute That Its Chosen Forum Is Entitled To Little
Deference ...........................................................................................................1

    B.    DBC Fails To Refute That The Northern District Of California Is A More
Convenient Forum For The Parties And Likely Witnesses ....................................2

    C.    DBC Fails To Refute That The Northern District Of California Is The
Situs Of Material Events ......................................................................................4

III.    DBC FAILS TO REFUTE THAT THE PUBLIC INTEREST FACTORS
WARRANT A TRANSFER ..........................................................................................5

IV.    CONCLUSION...............................................................................................................5

DM_US:21066211_1

## I.    INTRODUCTION

Although DBC[1] argues in its Opposition that Apple has not justified a transfer of this action to the Northern District of California, DBC fails to support its position with relevant facts or applicable case law.  Instead, DBC attempts misdirection by discussing:  sales of products (specifically, Apple's iTunes) that are not involved in this case; unsubstantiated suppositions about the existence of "witnesses and evidence ... outside California;" unrelated and distinguishable Apple cases from other jurisdictions; and non-analogous case law from the Fifth Circuit.  DBC cites inapposite case law from the Eastern District of Texas rather than addressing *Forcillo v. LeMond Fitness Inc.*, 220 F.R.D. 550 (S.D. Ill. 2004), the most recent, relevant, and analogous case from the Southern District of Illinois on venue transfers in patent cases.  DBC also fails to give full and fair consideration to the facts in this case.  When those facts are fairly analyzed under applicable Seventh Circuit law, it becomes clear that a transfer to the Northern District of California would not only promote the public's interest in the fair and efficient administration of justice, but would also best serve the convenience of the parties and witnesses.

## II.    DBC FAILS TO REFUTE THAT THE PRIVATE INTEREST FACTORS WARRANT A TRANSFER

In its opening brief, Apple demonstrated how each of the five private interest factors considered by courts in the Seventh Circuit weighs in favor of transfer.  As shown below, DBC's counter-arguments do not refute those points.

### A.    DBC Fails To Refute That Its Chosen Forum Is Entitled To Little Deference

DBC does not dispute that it is not a resident of this District.  Nor does DBC dispute that the only connection between this District and this case is that some accused products were sold here.  In the Seventh Circuit, this means that DBC's choice of forum is entitled to less deference. *Plotkin v. IP Axess, Inc.*, 168 F. Supp.2d 899, 902 (N.D. Ill. 2001).  Rather than address the law of the Seventh Circuit, DBC cites decisions from the Eastern District of Texas to argue that

---

[1]    Unless otherwise indicated, all abbreviations defined in Apple's opening brief ("Op. Br.") shall have the same meanings in this reply.

1

plaintiff's chosen forum is entitled to more deference.  The authority that DBC cites is simply inapposite and contrary to decisions within the Seventh Circuit that sales of an accused product alone within a district do not establish a connection to the District sufficient to warrant a denial of a transfer.  *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp.2d 871, 874 (N.D. Ill. 1999).

### B. DBC Fails To Refute That The Northern District Of California Is A More Convenient Forum For The Parties And Likely Witnesses

DBC's comparison of the relative convenience of the forums to the parties is inaccurate and misleading.  First, DBC inaccurately asserts that "one party *or* the other must travel in this case."  (Opp. at 6.)  But as Apple has explained, either ***both parties*** must travel from California to Illinois or ***one party*** must travel from Southern California to Northern California.[2] Transferring the case to the Northern District of California will not simply shift the travel burden from Apple to DBC, it will eliminate Apple's burden and greatly reduce DBC's burden.

Second, DBC's comparison of the relative convenience to likely witnesses is similarly flawed.  DBC fails to identify a single witness in Illinois.  Instead, DBC identifies Texas resident and the named inventor of the asserted patent, Michael D. Steffano, as a "key non-party witness for DBC."  (Opp. at 8.)[3]  Because it appears that DBC may have already arranged for Mr. Steffano to testify, the forum's ability to subpoena Mr. Steffano may not be an issue. Nevertheless, the Court in the Southern District of Illinois has no more subpoena power over Mr. Steffano than a court in the Northern District of California.  In addition, DBC represents that William Hulsey, another Texas resident, will likely testify about the prosecution of the patent.  It appears, however, that Mr. Hulsey became the prosecuting attorney only ***after*** the patent issued,

---

[2]    "Apple would not have to travel, and DBC, being a Southern California company, would need approximately 1-2 hours by plane to reach the forum."  (Op. Br. at 7-8.)

[3]    DBC's description of Mr. Steffano as a "non-party witness for DBC," rather than as a third-party witness, along with DBC's representation that he will "undoubtedly testify," cast doubt upon Mr. Steffano's status as a true, disinterested, non-party witness.  According to DBC's Rule 26 disclosures, Mr. Steffano is affiliated with the patent assignee Digital Property Management Group, LLC, which DBC also discusses in its Complaint.  (Finn Decl. ¶ 2, Ex. 1; Complaint at ¶ 11.)  Accordingly, Mr. Steffano's interest in this case and his relationship to DBC remain unknown and will be a topic of discovery.

and will be unable to testify about the substantive prosecution of the asserted patent.[4]  Moreover, although DBC correctly notes that Texas "is closer to Illinois than California" (*id.*), that fact does not make this forum more convenient.  Messrs. Steffano and Hulsey live in Austin, Texas, which is hardly "closer" to Benton, Illinois, than it is to San Jose, California, when the practicalities of travel are considered.  The total travel time from Austin, Texas, to either San Jose, California or Benton, Illinois is not substantially different when the time to drive from Lambert-St. Louis International Airport to Benton is included in the calculation.  (Finn Decl. ¶¶ 3-6, Exs. 2-5.)  With the choice of three daily non-stop flights from Austin to San Jose, the inconvenience to these witnesses in traveling to Northern California would not be materially different than the inconvenience in traveling to the Southern District of Illinois.  (Finn Decl. ¶ 5, Ex. 4.)  On the other hand, the inconvenience that third-party witness Bruce Renouard would incur should the case remain in the Southern District of Illinois increases significantly because he resides in the Northern District of California (a fact that DBC ignores entirely in its Opposition).  When the significance and number of Apple witnesses and their and Mr. Renouard's relative burdens in traveling to the two alternative forums are considered along with the relatively equal burdens that the two forums would impose upon Messrs. Steffano and Hulsey, Northern California is a far more convenient forum for the witnesses.

Third, DBC incorrectly asserts that Apple's size mandates that Apple should have to travel.  In *Forcillo*, a case that DBC fails to address, a transfer from the Southern District of Illinois was granted even though defendant Brunswick Corporation was a large, national corporation with sales of over $5 billion in 2004.  *Forcillo*, 220 F.R.D. at 550.  (Finn Decl. ¶ 10, Ex. 9.)  Accordingly, Apple's size does not negate the far greater convenience of litigating in the

---

[4]    According to the petition to revive in the prosecution history, Applicant transferred responsibility for the patent file to Mr. Hulsey sometime after January 18, 2007.  Because the patent issued in 1998, it appears that Mr. Hulsey did not have any involvement in the substantive prosecution of the asserted patent.  (Finn Decl. ¶ 9, Ex. 8.)

Northern District of California.[5]  Nor does *Defrancesco v. First Horizon Home Loan Corp.*, Slip Copy, No. 06-0058-DRH, 2006 WL 3196838, *1 (S.D. Ill. Nov. 3, 2006), cited by DBC, hold otherwise because the facts of that case are not analogous to the facts here.  In *Defrancesco*, an individual was suing a corporation in the individual's home forum, which tipped the balance in favor of allowing the case to remain where the individual resided.  Unlike the individual plaintiff in *Defrancesco*, however, DBC is a corporation headquartered in Southern California engaged in the business of licensing intellectual property.  The Southern District of Illinois is not DBC's home forum, DBC is not an individual, and DBC's witnesses are not located in Illinois.  The Northern District of California is factually and legally the more convenient forum.

### C.    DBC Fails To Refute That The Northern District Of California Is The Situs Of Material Events

DBC fails to refute that the Northern District of California is the situs of the material events that gave rise to this action.  In its Opposition, DBC did not directly address this factor.  Instead, DBC argued that sales of the accused product in the Southern District of Illinois justify a denial of transfer.  DBC further confused the issue when it discussed Apple contacts with this district through an "iTunes website" and licenses to use iTunes.  (*See*, *e.g.*, Opp. at 7.)  But DBC's discussion of iTunes is irrelevant to the transfer issue because iTunes is not the product accused of infringement in this case.  (*See*, *e.g.*, Complaint ¶ 15 (accusing "the iChat 'backdrop' feature of the Leopard operating system").)[6]  DBC also wrongly asserts that "a significant amount of sales takes place in the Southern District of Illinois."  Not only is this statement unsubstantiated, it was refuted in Apple's initial motion.  (Op. Br. at 11, n.8.)  The fact remains that the design, development, and testing of the allegedly infringing feature of the accused

---

[5]    In its Opposition, DBC points to *Apple Computer, Inc. v. Unova, Inc.*, No. Civ. A. 03-101-JJF, 2003 WL 22928034, *3 (D. Del. Nov. 25, 2003) to imply that this case should be retained.  However, in that case (which was decided under Third Circuit law), three of the four defendants were incorporated in Delaware (*id.* at *3) and the court found insufficient justification for a transfer (*id.* at *5).

[6]    Although DBC's statements regarding iTunes are also factually inaccurate, Apple will not undertake here to correct the inaccuracies because iTunes has nothing to do with this case.

4

product occurred in the Northern District of California. Therefore, this factor weighs in favor of transfer.

## III. DBC FAILS TO REFUTE THAT THE PUBLIC INTEREST FACTORS WARRANT A TRANSFER

DBC fails to refute that the Northern District of California has a stronger relation to the occurrence at issue and has a stronger interest in resolving this controversy. *See*, *e.g.*, *Amoco Oil Co. v. Mobil Corp.*, 90 F. Supp.2d 958, 961-62 (N.D. Ill. 2000). In its Opposition, DBC offers nothing beyond unsupported assertions to contradict the sworn statements by Apple that the allegedly infringing feature of the accused product was designed, developed, tested, and marketed in the Northern District of California. Instead, DBC tries to confuse the issue by listing all resellers in the Southern District of Illinois that sell *any* Apple product. This evidence is irrelevant. This factor concentrates on the "occurrence at issue," and the only "occurrence" in this case that occurred in the Southern District of Illinois is the sale of the accused product. DBC does not dispute that the ***accused product*** is only offered by two resellers in this District as compared to the 32 resellers in the San Jose area alone. DBC failed to cite any cases from within the Seventh Circuit that refute that the Northern District of California has a much stronger relation to this case and a stronger desire to resolve this controversy.[7] Accordingly, DBC has not refuted that these two public interest factors weigh strongly in favor of transfer while none weigh against transfer.

## IV. CONCLUSION

For the foregoing reasons, Apple respectively requests that its motion to transfer venue to the Northern District of California, San Jose Division, be granted.

---

[7] DBC cites cases from district courts within the Fifth Circuit for the proposition that sales of the accused product in the Southern District of Illinois, by itself, are sufficient to weigh against the public interest in transfer. This is counter to decisions from district courts within the Seventh Circuit. *See*, *e.g.*, *Cooper Bauck Corp. v. Dolby Labs., Inc.*, 2006 U.S. Dist. LEXIS 44885, *23-24 (N.D. Ill. June 19, 2006); *MLR, LLC v. Kyocera Wireless Corp.*, 2005 U.S. Dist. LEXIS 43895, *10-11 (N.D. Ill. April 6, 2005). Moreover, even Fifth Circuit case law on this issue is in a state of flux. (*See*, *e.g.*, *In re Volkswagen of Am. Inc.*, 506 F.3d 376, 387 (5th Cir. 2007), *reh'g en banc*, 2008 U.S. App. LEXIS 3322 (5th Cir. 2008) (Fifth Circuit holding in products liability case that the fact the product was sold in a district was insufficient to defeat a transfer to the district where the accident occurred.).)

DM_US:21066211_1

Dated:  March 4, 2008

By:    /s/ James F. Valentine            
         Henry C. Bunsow (admitted *pro hac vice*)
         California State Bar No. 60707
         James F. Valentine (admitted *pro hac vice*)
         California State Bar No. 149269
         Jason T. Anderson (admitted *pro hac vice*)
         California State Bar No. 212938
         Ryan J. Moran (admitted *pro hac vice*)
         California State Bar No. 244447
         Christina M. Finn (admitted *pro hac vice*)
         California State Bar No. 247838
         HOWREY LLP
         1950 University Avenue, 4th Floor
         East Palo Alto, CA  94303
         Telephone:  650.798.3500
         Facsimile:   650.798.3600
         E-mail:  BunsowH@howrey.com
         E-mail:  ValentineJ@howrey.com
         E-mail:  AndersonJ@howrey.com
         E-mail:  MoranR@howrey.com
         E-mail:  FinnC@howrey.com

         Joseph P. Conran
         joe.conran@husch.com
         Dutro E. Campbell
         bruce.campbell@husch.com
         HUSCH & EPPENBERGER, LLC
         190 Carondelet Plaza, Suite 600
         St. Louis, MO  63105
         Telephone:  314.480.1500
         Facsimile:  314.480.1505

         Attorneys for Defendant and
         Counterclaimant APPLE INC.

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION**

| | | |
|---|---|---|
| DIGITAL BACKGROUND CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:07-CV-00803-JPG-CJP |
| | ) | |
| APPLE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF CHRISTINA M. FINN IN SUPPORT OF
DEFENDANT'S REPLY TO ITS MOTION TO TRANSFER VENUE**

I, Christina M. Finn, declare as follows:

1.      I am an attorney with the law firm of Howrey LLP, counsel of record for Defendant in the above-entitled action.  I am duly licensed in the State of California.  Except where otherwise indicated, I make this declaration based on my personal knowledge, the record in this action, and matters of public record.  If called upon as a witness, I could and would testify competently as to the matters set forth below.

2.      A true and correct copy of the Rule 26 Disclosures of Plaintiff Digital Background Corporation, which was served on Apple on February 15, 2008, is annexed hereto as Exhibit 1.

3.      Using the Travelocity website, www.travelocity.com, a search was performed on February 26, 2008 for direct flights from Austin, Texas to St. Louis, Missouri.  This search located two direct flights from Austin to St. Louis.  According to the website, the direct flights take approximately two hours.  A true and correct copy of the results of the search is annexed hereto as Exhibit 2.

4.      Using the Google maps website, http://maps.google.com, a search was performed on February 26, 2008 to determine the time and distance to drive from the airport in St. Louis, Missouri to the courthouse in Benton, Illinois.  This search revealed that this trip would cover 112 miles and take approximately 1 hour and 56 minutes.  A true and correct copy of the results of the search is annexed hereto as Exhibit 3.  Therefore, the total time to travel from Austin to the federal courthouse in Benton, via a flight to St Louis, is approximately 3 hours and 56 minutes.

5.      Using the Travelocity website, www.travelocity.com, a search was performed on February 26, 2008 for direct flights from Austin, Texas, to San Jose, California.  This search located three direct flights from Austin to San Jose.  According to the website, the direct flights take approximately 3 hours and 45 minutes.  A true and correct copy of the results of the search is annexed hereto as Exhibit 4.

1

6.      Using the Google maps website, http://maps.google.com, a search was performed on February 26, 2008 to determine the time and distance to drive from the airport in San Jose, California to the courthouse in San Jose.  This search revealed that this trip would cover 4.3 miles and take approximately 11 minutes.  A true and correct copy of the results of the search is annexed hereto as Exhibit 5.  Therefore, the total time to travel from Austin to the courthouse in San Jose is approximately 3 hours and 56 minutes.

7.      Using the Travelocity website, www.travelocity.com, a search was performed on February 28, 2008 for flights from Austin, Texas to Marion, Illinois.  Marion is the closest city to Benton that has an airport.  This search located no direct flights from Austin to Marion.  All flights located by this search required a layover in two different cities before reaching Marion.  One flight took approximately 4 hours and 33 minutes and the other took approximately 7 hours and 12 minutes.  A true and correct copy of the results of the search is annexed hereto as Exhibit 6.

8.      Using the Google maps website, http://maps.google.com, a search was performed on February 29, 2008 to determine the time and distance to drive from the airport in Marion, Illinois to the courthouse in Benton.  This search revealed that this trip would cover 21.9 miles and take approximately 25 minutes.  A true and correct copy of the results of the search is annexed hereto as Exhibit 7.  Therefore, the total time to travel from Austin to the courthouse in Benton, via a flight to Marion, would take anywhere from 4 hours and 58 minutes to 7 hours and 37 minutes depending on the flight that was chosen.

9.      A true and correct copy of a document from the file history of the patent-in-suit titled "Petition For Revival Of Patent Unintentionally Abandoned Due To Unpaid Maintenance Fee Under 37 CFR §1.378" is annexed hereto as Exhibit 8.  The document states that responsibility for the patent was transferred from the previous prosecuting attorney to William Hulsey after January 18, 2007.

2

10.     A true and correct copy of excerpts from Brunswick Corporation's Form 10-K for the fiscal year ended December 31, 2004, showing over $4 billion in sales in 2003 and over $5 billion in sales in 2004, is annexed hereto as Exhibit 9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  March 3, 2008                    By: _____
                                              CHRISTINA M. FINN

DM_US:21063729_1

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| **DIGITAL BACKGROUND CORPORATION,** )<br><br>*Plaintiff,* )<br>**vs.** )<br><br>**APPLE, INC.,** )<br><br>*Defendant.* ) | **CASE NO.: 3:07-CV-00803-JPG-CJP<br>JURY TRIAL DEMANDED** |

## DIGITAL BACKGROUND CORPORATION'S RULE 26(a)(1) DISCLOSURES

In accordance with Fed. R. Civ. P. 26(a)(1), Plaintiff Digital Background Corporation

("DBC") makes the following initial disclosures:

### Introductory Paragraph

Since discovery in this case has not yet begun, DBC reserves the right to supplement

these disclosures and its production as necessary.

### Disclosures

(A)    The following individuals are likely to have discoverable information that DBC

may use to support its claims or defenses:

1) Michael D. Steffano, Digital Property Management Group, LLC, 5104 Beverly

Hills Drive, First Floor, Austin, TX  78731, (512) 302-1574, ext. 411, is likely to have

information concerning at least the following issues: a) the conception of the subject matter and

reduction to practice of the invention claimed in U.S. Patent No. 5,764,306 ("the '306 patent");

b) the prosecution of the patent application related to this patent; c) infringement by Apple, Inc.

("Apple"); d) validity and enforceability of the '306 patent; e) non-obviousness of the '306

patent; and f) damages;

2) William N. Hulsey, 1250 S. Capitol of Texas Highway, Building 3, Suite 610, Austin, TX 78746, (512) 795-1295, is likely to have information concerning a) the prosecution of the '306 patent and the patent application related to the '306 patent; b) validity and enforceability of the '306 patent; and c) non-obviousness of the '306 patent;

3) Bruce Arthur, 1 Infinite Loop, Cupertino, CA 95014, is likely to have information concerning at least the following issues: a) the design and engineering of the Mac® OS X v 10.5 Leopard ("Leopard") including the iChat and other applications (such as the Background Effects feature); b) the operation of iChat and the Background Effects feature; c) knowledge concerning the software and source code of the Leopard; c) the conception, development and ongoing support of iChat and the Background Effects feature; and d) the location of key documents relating to the design and development of the Leopard operating system, iChat, and the Background Effects feature, including the source code;

4) Chendi Zhang, 1 Infinite Loop, Cupertino, CA 95014, is likely to have information concerning at least the following issues: a) the design and development of the iChat Backdrop Effects feature; b) the operation of the iChat; and c) knowledge concerning the software and source code of the Leopard, iChat and Backdrop Effects feature;

5) Michael Stochosky, 1 Infinite Loop, Cupertino, CA 95014, is likely to have information concerning at least the following issues: a) the design and development of the iChat Backdrop Effects feature; b) the operation of the iChat; and c) knowledge concerning the software and source code of the Leopard, iChat and Backdrop Effects feature;

6) Kurt Knight, 1 Infinite Loop, Cupertino, CA 95014, is likely to have information concerning at least the following issues: a) the development and marketing of the

Leopard, iChat and Backdrop Effects feature; and b) sales, licenses and offers for sale of the Leopard, iChat and Backdrop Effects feature and accompanying iChat;

7) Ronak Shah, 1 Infinite Loop, Cupertino, CA 95014, is likely to have information concerning at least the following issues: a) the development and marketing of the Leopard, iChat and Backdrop Effects feature; and b) sales, licenses and offers for sale of the Leopard, iChat and Backdrop Effects feature and accompanying iChat;

8) One or more additional witnesses from Apple;

9) One or more witnesses listed by Apple;

10) Additional witnesses, the identities of whom are learned through further discovery, investigation, and trial preparation.

(B)    Documents, data compilations, and tangible things that are in the possession, custody or control of DBC and that DBC may use to support its claims or defenses include:

1) documents that refer or relate to DBC's patent, including the patent itself and its prosecution history; 2) documents showing the conception and reduction to practice of the instant invention; 3) documents that show infringement by defendant; and 4) materials that show the claimed inventions are non-obvious.  Copies of such materials are available for review and/or copying by Apple during normal business hours at 707 Berkshire Blvd, East Alton, IL 62024, and/or, will be produced to Apple counsel by request, and will be supplemented throughout the course of this action as necessary and appropriate.

(C)    A computation of any category of damages claimed by the disclosing party:

As discovery has not yet begun, DBC cannot yet calculate its damages until defendant produces its financial information including, but not limited to, total number of units sold.  Defendant's infringement is ongoing, and plaintiff's damages are increasing.  Defendant is

required to supplement its disclosure of information up to the time of trial, and DBC's calculation will be adjusted to reflect that supplemental information.

The damages claimed by DBC include DBC's damages sustained as a result of defendant's infringement; a sum above the amount found as actual damages not exceeding three times such amount; DBC's reasonable attorneys' fees; DBC's costs and disbursements in bringing this action and prejudgment and post-judgment interest; punitive damages; and intangible damages relating to the harm of DBC's goodwill, reputation, and the harm to DBC's technical "know-how." The amount of those damages is not quantified and is unknown at this time.

(D)    Any insurance agreements under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment:

No such policy has yet been located.

Respectfully submitted,
Digital Background Corporation,

By its attorneys,
SIMMONSCOOPER LLC

Dated: February 15, 2008          By:_____
                                  Paul A. Lesko – (IL Bar #6288806)
                                  Stephen C. Smith – (IL Bar#6279828)
                                  Katharine A. Wark – (IL Bar #6285427)
                                  707 Berkshire Blvd.
                                  P.O. Box 521
                                  East Alton, Illinois 62024
                                  (618) 259-2222
                                  (618) 259-2251 – *facsimile*
                                  E-mail: plesko@simmonscooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, Plaintiff Digital Background Corporation served its Initial Disclosures pursuant to Federal Rules of Civil Procedure 26(a)(1) upon the following counsel via first class mail, postage prepaid.

Henry C. Bunsow, Esq.
Howrey LLP
525 Market St., Suite 3600
San Francisco, CA  94105

James F. Valentine, Esq.
Jason Anderson, Esq.
Ryan Moran, Esq.
Christine M. Finn, Esq.
Howrey LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303

Greg G. Gutzler, Esq.
Dutro E. Campbell, Esq.
Joseph P. Conran, Esq.
Husch & Eppenberger, LLC
The Plaza in Clayton Office Tower
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105

_____
Paul A. Lesko
Attorneys for Plaintiff
Digital Background Corporation

# Exhibit 2



## Your Flight to St Louis, MO (STL)

**Departing:** Thu, Mar 27 - **Returning:** Fri, Mar 28 | 1 Adult

Change Your Search    Save to FareWatcher Plus<sup>SM</sup>

Hotwire.com Save up to 35% on flights ▶

| Your Search | Flights + 1 Night Hotel |
|---|---|
| Depart Thu, Mar 27 from $233 | Save with TotalTrip<sup>SM</sup> from $272 |

? Help with this page

"Total" for e-tickets incl. taxes & fees. Add'l fees for paper ticket.

| | American Airlines | Continental Airlines | United | Northwest Airlines | Delta Air Lines | US Airways |
|---|---|---|---|---|---|---|
| **All 2 Nonstops** displayed below | $287 Total $325 | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops |
| **All Flights** 69 flights | $190 Total $233 | $198 Total $237 | $217 Total $266 | $267 Total $312 | $272 Total $321 | $805 Total $859 |

| Featured Package | Flights + 1 Night Hotel from $272 |
|---|---|

### Select Departing Flight for Thu, Mar 27

2 flight options:  1 - 2

| Airline | Departure Time | Arrival Time | Total Travel Time | Roundtrip Price includes taxes and fees | |
|---|---|---|---|---|---|
| American Airlines Flight 1646 | 5:05pm Austin, TX (AUS) | 7:00pm St Louis, MO (STL) | 1hr 55min - Nonstop | $325 per person **Select** | **or** $363 per person This Flight + 1 Night Hotel **Options** |
| American Airlines Flight 5303 operated by AMERICAN CONNECTION/CHAUTAUQUA | 1:05pm Austin, TX (AUS) | 3:15pm St Louis, MO (STL) | 2hrs 10min - Nonstop | $345 per person **Select** | |

Change Your Search  |  Save to FareWatcher Plus<sup>SM</sup>

2 flight options:  1 - 2

# EXHIBIT 3



Start **Lambert-St Louis Int'L-Arrivals**

End **Benton, IL**

Travel **112 mi – about 1 hour 56 mins**

To see all the details that are visible on the screen, use the "Print" link next to the map.



**Lambert-St Louis Int'L-Arrivals**

Drive: 112 mi – about 1 hour 56 mins

| | | |
|---|---|---|
| 1. Head **northwest** toward **Shops Rd** | | 0.1 mi |
| ← 2. Turn **left** at **Airport exit** | | 413 ft |
| ← 3. Turn **left** at **Lambert Int'l Blvd/Natural Bridge Rd** <br> Continue to follow Natural Bridge Rd | | 1.2 mi <br> 3 mins |
| 4. Take the ramp onto **I-70 E** | | 12.3 mi <br> 14 mins |
| 5. Take exit **250A** toward **Illinois/M L King Bridge/Arch-Riverfront** | | 0.1 mi |
| 6. Merge onto **N Memorial Dr** | | 0.2 mi |

← 7. Slight **left** at **Dr Martin Luther King Jr Memorial Bridge** (signs for **Illinois/ M L King Bridge**)     1.0 mi
   Entering Illinois                                                                                                2 mins

8. Take the **IL-3 N/I-64 E** ramp to **Louisville/St Clair Ave**     0.9 mi
                                                                       2 mins

9. Merge onto **I-64 E**     75.3 mi
                             1 hour 10 mins

10. Continue on **I-57 S** (signs for **I-57 S/Memphis**)     20.1 mi
                                                             19 mins

11. Take exit **71** for **IL-14** toward **Christopher/Benton**     0.4 mi
                                                                     1 min

← 12. Turn **left** at **IL-14 E/IL-34 E/W Main St**     0.8 mi
                                                        4 mins

 **Benton, IL**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2008 NAVTEQ™, Sanborn

# EXHIBIT 4



## travelocity®

| Home | Flights | Hotels | Cars/Rail | Vacation Packages | Cruises | Last Minute Packages | Activities |

**Your Flight to San Jose, CA (SJC)**
Departing: Thu, Mar 27 - Returning: Fri, Mar 28 | 1 Adult
Change Your Search     Save to FareWatcher Plus℠

Hotwire.com Save up to 35% on flights ⊙

| Your Search | Other Dates | Flights + 1 Night Hotel |
| Depart Thu, Mar 27 from $287 | View Options from $246 | Save with TotalTrip ℠ from $326 |

❓ Help with this page

"Total" for e-tickets incl. taxes & fees. Add'l fees for paper ticket.

| | Frontier Airlines | American Airlines | Continental Airlines | US Airways | United | Delta Air Lines | Northwest Airlines |
|---|---|---|---|---|---|---|---|
| **All 3 Nonstops** displayed below | --- 0 nonstops | $347 Total $385 | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops | --- 0 nonstops |
| **All Flights** 63 flights | $238 Total $287 | $260 Total $312 | $272 Total $324 | $301 Total $349 | $311 Total $360 | $347 Total $396 | $480 Total $520 |

| **Featured Package** ▶ | 🏨 **Flights + 1 Night Hotel** from **$326** |

**Select Departing Flight for Thu, Mar 27**                        3 flight options: 1 - 3

| Airline | Departure Time | Arrival Time | Total Travel Time | Roundtrip Price includes taxes and fees | |
|---|---|---|---|---|---|
| **American Airlines** Flight 579 | 6:40am Austin, TX (AUS) | 8:25am San Jose, CA (SJC) | 3hrs 45min - Nonstop | **$385** per person [Select] | *or* $447 per person **This Flight + 1 Night Hotel** [Options] |
| **American Airlines** Flight 1023 | 3:05pm Austin, TX (AUS) | 4:50pm San Jose, CA (SJC) | 3hrs 45min - Nonstop | **$385** per person [Select] | |
| **American Airlines** Flight 1703 | 6:20pm Austin, TX (AUS) | 8:05pm San Jose, CA (SJC) | 3hrs 45min - Nonstop | **$385** per person [Select] | |

Change Your Search  |  Save to FareWatcher Plus℠                        3 flight options: 1 - 3

# EXHIBIT 5



Start **Norman Y Mineta San Jose Int'l**
End **280 S 1st St**
**San Jose, CA 95113**
Travel **4.3 mi – about 11 mins**

Directions:

 **Norman Y Mineta San Jose Int'l**

Drive: 4.3 mi – about 11 mins

| | | |
|---|---|---|
| 1. Head **southeast** on **Airport Blvd** | 190 ft | |
| ➡ 2. Slight **right** to stay on **Airport Blvd** (signs for **Departures A/Terminal C**) | 0.7 mi | 3 mins |
| ➡ 3. Slight **right** (signs for **CA-87/US-101/Skyport Dr**) | 0.1 mi | |
| ➡ 4. Slight **right** to merge onto **CA-87 S/Guadalupe Pkwy** toward **Downtown** | 2.6 mi | 3 mins |
| 5. Take the **Park Ave** exit toward **San Carlos St/CA-82** | 0.2 mi | |

6.  Merge onto **Delmas Ave**                                          0.1 mi

←7.  Turn **left** at **W San Carlos St**                              0.5 mi
                                                                       3 mins

←8.  Turn **left** at **S 1st St**                                     157 ft



**280 S 1st St**
**San Jose, CA 95113**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2008 NAVTEQ™

# EXHIBIT 6



Home | Flights | Hotels | Cars/Rail | Vacation Packages | Cruises | Last Minute Packages | Activities

## Your Flight to Marion, IL (MWA)

**Departing:** Thu, Mar 27 - **Returning:** Fri, Mar 28 | 1 Adult

Change Your Search    Save to FareWatcher Plus[SM]

Hotwire Save up to 35% on flights

**Your Search** Depart Thu, Mar 27 from $485

**Flights + 1 Night Hotel** Save with TotalTrip [SM] from $543

Help with this page

"Total" for e-tickets incl. taxes & fees. Add'l fees for paper ticket.

| | United | American Airlines |
|---|---|---|
| **Nonstops Only** 0 flights | --- 0 nonstops | --- 0 nonstops |
| **All 2 Flights** displayed below | **$436** Total $485 | **$470** Total $519 |

**Featured Package** Flights + 1 Night Hotel from $543

## Select Departing Flight for Thu, Mar 27

2 flight options: 1 - 2

| Airline | Departure Time | Arrival Time | Total Travel Time | Roundtrip Price includes taxes and fees |
|---|---|---|---|---|
| **American Airlines** Flight 1743 / 1118<br>**Great Lakes Aviation** Flight 5210 | **9:00am** Austin, TX (AUS) | **1:33pm** Marion, IL (MWA) | **4hrs 33min** - 2 Stops<br>Change planes in Dallas/Ft Worth, TX (DFW)<br>Change planes in St Louis, MO (STL) | **$519** per person Select<br>Turboprop Service more |
| **United** Flight 6022 operated by UNITED EXPRESS/SKYWEST / Flight 8035 operated by UNITED EXPRESS/TRANS STATES<br>**Great Lakes Aviation** Flight 5210 | **6:21am** Austin, TX (AUS) | **1:33pm** Marion, IL (MWA) | **7hrs 12min** - 2 Stops<br>Change planes in Chicago, IL (ORD)<br>Change planes in St Louis, MO (STL) | **$485** per person Select<br>or **$543** per person This Flight + 1 Night Hotel Options |

Change Your Search | Save to FareWatcher Plus[SM]    2 flight options: 1 - 2

# EXHIBIT 7



Start **10400 Terminal Dr**
**Marion, IL 62959**
End **301 W Main St**
**Benton, IL 62812**
Travel **21.9 mi – about 25 mins**



 **10400 Terminal Dr**
**Marion, IL 62959**

**Drive:** 21.9 mi – about 25 mins

|  |  |  |
|---|---|---|
| 1. | Head **south** on **Terminal Dr** toward **Aviation Dr** | 374 ft |
| ← 2. | Turn **left** at **W DeYoung St** | 2.9 mi<br>5 mins |
| 3. | Merge onto **I-57 N** via the ramp to **Mt Vernon** | 18.0 mi<br>17 mins |
| 4. | Take exit **71** for **IL-14** toward **Christopher/Benton** | 0.3 mi |
| → 5. | Turn **right** at IL-14 E/IL-34 E/**W Main St** (signs for **Christopher**) | 0.5 mi<br>2 mins |

**301 W Main St**
**Benton, IL 62812**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2008 NAVTEQ™

**Overview**



**Start**



**End**



Map data ©2008 NAVTEQ™

# EXHIBIT 8

01- 26 -07

DAC BOX M

Attorney Docket No.: AI-RG002US0

08/819,921

(stamp) OIPE JAN 25 2007 PATENT & TRADEMARK OFFICE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | Michael Steffano |
| Application Number | 08/819,921 |
| Patent Number | 5,764,306 |
| Filing Date: | March 18, 1997 |
| Patent Date: | June 9, 1998 |
| Group Art Unit: | 2713 |
| Examiner: | Howard W. Britton |
| Title: | REAL-TIME METHOD OF DIGITALLY ALTERING A VIDEO DATA STREAM TO REMOVE PORTIONS OF THE ORIGINAL IMAGE AND SUBSTITUTE ELEMENTS TO CREATE A NEW IMAGE |

**RECEIVED**

FEB 1 2 2007

OFFICE OF PETITIONS

Mail Stop: Office of Petitions
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**CERTIFICATE OF MAILING UNDER 1.10**

This paper or fee is being deposited on the date indicated below with the United States Postal Service pursuant to 37 CFR 1.10, and is addressed to Mail Stop: Office of Petitions, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

"Express Mail" mailing label number: EQ 351525178US

Date of Deposit: January 25, 2007

Cullin Kiker

## PETITION FOR REVIVAL OF PATENT UNINTENTIONALLY ABANDONED DUE TO UNPAID MAINTENANCE FEE UNDER 37 CFR §1.378

000000.2 5764306

**Dear Sir:**

1640.00 OP
1150.00 OP

Applicant hereby petitions for revival of this application. The above-identified patent became abandoned for failure to timely respond to a Notice of Non Payment of Maintenance Fee filed under 37 CFR 1.362.

Applicant's previous attorney worked at the Jones Day law firm. The attorney left the firm without assigning another to follow up Applicant's file. Applicant had no knowledge of this error by the attorney until January 18, 2007. It was both unexpected and unintentional for the fee payment to lapse. Immediately after leaning of the error, Applicant transferred responsibility for the file to Hulsey Intellectual Property Attorneys, P.C.

01/29/2007 WASFAW1 0000026 5764306
01 FC:1599                          2790.00 OP

1

Attorney Docket No.: APRG002US0                                    08/819,921

Therefore, Applicant respectfully requests that this Office grant this Petition and allow the above-referenced patent to be revived.

Applicant hereby encloses a check which includes the maintenance fee for a small entity, according to 37 CFR §1.20(e), of $1,150.00 along with the fees required to cover the surcharge for the acceptance of maintenance fees after the expiration of a patent for non-timely payment of a maintenance fee due to unintentional circumstances, according to 37 CFR §1.20(i)(2), in the amount of $1,640.00 for the above-referenced patent. Since this utility patent was filed on or after June 8, 1995, no terminal disclaimer is required.

If the Examiner has any questions or comments, or if further clarification is required, it is requested that the Examiner contact the undersigned at the telephone number listed below. When contacting the undersigned, please reference Attorney Docket No. APRG002US0.

Respectfully submitted,

By: _____
William N. Hulsey III
Reg. No. 33,402

Dated: January 25, 2007

**HULSEY**$^{IP}$ Intellectual Property Attorneys, P.C.
1250 S. Capital of Texas Hwy.
Building 3, Suite 610
Austin, Texas 78746
(512) 658-7173 [Telephone]
(512) 233-2602 [Fax]

**RECEIVED**

FEB 1 2 2007

OFFICE OF PETITIONS

2

# EXHIBIT 9

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

_____

# Form 10-K

[X] **Annual report pursuant to Section 13 or 15(d) of**
the Securities Exchange Act of 1934
For the fiscal year ended December 31, 2004, or
[  ] **Transition Report Pursuant to Section 13 or 15(d)**
of the Securities Exchange Act of 1934
Commission file number 1-1043

_____



# Brunswick Corporation

*(Exact name of registrant in its charter)*

| | |
|---|---|
| **Delaware** | **36-0848180** |
| *(State of incorporation)* | *(I.R.S. Employer Identification No.)* |
| **1 N. Field Ct., Lake Forest, Illinois** | **60045-4811** |
| *(Address of principal executive offices)* | *(zip code)* |

**(847) 735-4700**
**(Registrant's telephone number, including area code)**

**Securities Registered pursuant to Section 12(b) of the Act:**

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock ($0.75 par value) | New York, Chicago, Pacific |
| Preferred Stock Purchase Rights | and London Stock Exchanges |

**Securities registered Pursuant to Section 12(g) of the Act:**
**None**
_____

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [  ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in the definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [X]

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2). Yes [X] No [  ]

As of **July 2, 2004**, the aggregate market value of the voting stock of the registrant held by non-affiliates was $3,700,250,624. Such number excludes stock beneficially owned by officers and directors. This does not constitute an admission that they are affiliates.

The number of shares of Common Stock ($0.75 par value) of the registrant outstanding as of **February 25 , 2005**, was 96,891,136.

**DOCUMENTS INCORPORATED BY REFERENCE**
**Part III** of this Report on Form 10-K incorporates by reference certain information that will be set forth in the Company's definitive Proxy Statement for the Annual Meeting of Shareholders scheduled to be held on May 4, 2005.

ANNUAL REPORT ON FORM 10-K
TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **Part I** | | |
| Item 1. | Business | 3 |
| Item 2. | Properties | 10 |
| Item 3. | Legal Proceedings | 11 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 13 |
| **Part II** | | |
| Item 5. | Market for the Registrant's Common Equity, Related Stockholder Matters | 14 |
| Item 6. | Selected Financial Data | 14 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 16 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 34 |
| Item 8. | Financial Statements and Supplementary Data | 35 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 35 |
| Item 9A. | Controls and Procedures | 35 |
| **Part III** | | |
| Item 10. | Directors and Executive Officers of the Registrant | 37 |
| Item 11. | Executive Compensation | 38 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 38 |
| Item 13. | Certain Relationships and Related Transactions | 39 |
| Item 14. | Principal Accounting Fees and Services | 39 |
| **Part IV** | | |
| Item 15. | Exhibits and Financial Statement Schedules | 40 |

**BRUNSWICK CORPORATION**

**CONSOLIDATED STATEMENTS OF INCOME**

| (In millions, except per share data) | | For the Years Ended December 31 | | | | |
|---|---|---|---|---|---|---|
| | | 2004 | | 2003 | | 2002 |
| Net sales | $ | **5,229.3** | $ | 4,128.7 | $ | 3,711.9 |
| Cost of sales | | **3,915.1** | | 3,131.6 | | 2,852.0 |
| Selling, general and administrative expense | | **782.4** | | 632.5 | | 560.5 |
| Research and development expense | | **131.1** | | 118.2 | | 102.8 |
| Litigation charge | | **-** | | 25.0 | | - |
| **Operating earnings** | | **400.7** | | 221.4 | | 196.6 |
| Interest expense | | **(45.2)** | | (41.0) | | (43.3) |
| Other income, net | | **23.0** | | 20.7 | | 8.3 |
| **Earnings before income taxes** | | **378.5** | | 201.1 | | 161.6 |
| Income tax provision | | **108.7** | | 65.9 | | 58.1 |
| **Earnings before cumulative effect of change in accounting principle** | | **269.8** | | 135.2 | | 103.5 |
| Cumulative effect of change in accounting principle, net of tax | | **-** | | - | | (25.1) |
| **Net earnings** | $ | **269.8** | $ | 135.2 | $ | 78.4 |
| | | | | | | |
| **Basic earnings per common share:** | | | | | | |
| Earnings before cumulative effect of change in accounting principle | $ | **2.82** | $ | 1.48 | $ | 1.15 |
| Cumulative effect of change in accounting principle | | **-** | | - | | (0.28) |
| Net earnings | $ | **2.82** | $ | 1.48 | $ | 0.87 |
| | | | | | | |
| **Diluted earnings per common share:** | | | | | | |
| Earnings before cumulative effect of change in accounting principle | $ | **2.77** | $ | 1.47 | $ | 1.14 |
| Cumulative effect of change in accounting principle | | **-** | | - | | (0.28) |
| Net earnings | $ | **2.77** | $ | 1.47 | $ | 0.86 |
| | | | | | | |
| **Average shares used for computation of:** | | | | | | |
| Basic earnings per share | | **95.6** | | 91.2 | | 90.0 |
| Diluted earnings per share | | **97.3** | | 91.9 | | 90.7 |
| | | | | | | |
| **Cash dividends declared per common share** | $ | **0.60** | $ | 0.50 | $ | 0.50 |

The Notes to Consolidated Financial Statements are an integral part of these consolidated statements.

**BRUNSWICK CORPORATION**

**CONSOLIDATED BALANCE SHEETS**

| | As of December 31 | |
| --- | --- | --- |
| | **2004** | **2003** |
| **(In millions)** | | |
| **Assets** | | |
| **Current assets** | | |
| Cash and cash equivalents, at cost, which approximates market | $ **499.8** | $ 345.9 |
| Accounts and notes receivable, less allowances of $29.0 and $31.3 | **463.2** | 374.4 |
| Inventories | | |
| Finished goods | **389.9** | 325.3 |
| Work-in-process | **260.5** | 205.7 |
| Raw materials | **136.4** | 92.8 |
| Net inventories | **786.8** | 623.8 |
| Deferred income taxes | **292.7** | 302.3 |
| Prepaid expenses and other | **56.2** | 68.8 |
| Current assets | **2,098.7** | 1,715.2 |
| **Property** | | |
| Land | **68.8** | 70.3 |
| Buildings and improvements | **548.5** | 505.7 |
| Equipment | **1,071.8** | 1,042.5 |
| Total land, buildings and improvements and equipment | **1,689.1** | 1,618.5 |
| Accumulated depreciation | **(942.8)** | (912.4) |
| Net land, buildings and improvements and equipment | **746.3** | 706.1 |
| Unamortized product tooling costs | **130.1** | 121.0 |
| Net property | **876.4** | 827.1 |
| **Other assets** | | |
| Goodwill | **624.8** | 515.1 |
| Other intangibles | **328.0** | 184.6 |
| Investments | **182.9** | 148.1 |
| Other long-term assets | **235.6** | 212.4 |
| Other assets | **1,371.3** | 1,060.2 |
| **Total assets** | $ **4,346.4** | $ 3,602.5 |

The Notes to Consolidated Financial Statements are an integral part of these consolidated statements.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system to those attorneys of record with an email address indicated, this 4th day of March, 2008:

Paul A. Lesko, Esq.
plesko@simmonscooper.com
Stephen C. Smith, Esq.
ssmith@simmonscooper.com
Katharine A. Wark, Esq.
kwark@simmonscooper.com
Ted N. Gianaris, Esq.
tgianaris@simmonscooper.com
SIMMONSCOOPER LLC
707 Berkshire Boulevard
Post Office Box 521
East Alton, IL  62024

*Attorneys for Plaintiff Digital Background Corporation*

　　　　　　　　　　　　　　　　　/s/ James F. Valentine
　　　　　　　　　　　　　　　　　JAMES F. VALENTINE

1